## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF OHIO
## EASTERN DIVISION

| | | |
|---|---|---|
| LARRY TAWNEY, JR., | ) | Case No. 1:20-cv-01541 |
| | ) | |
| Plaintiff, | ) | Judge J. Philip Calabrese |
| | ) | |
| v. | ) | Magistrate Judge David A. Ruiz |
| | ) | |
| PORTAGE COUNTY, OHIO, *et al.*, | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

### OPINION AND ORDER

Plaintiff Larry Tawney, Jr. was sentenced in State court to a term of imprisonment. He spent the night in the county jail awaiting transport to prison. In this federal civil rights lawsuit, Plaintiff alleges that various public employees entered his cell and viciously attacked him. Defendants Portage County, Ohio and the employees named as defendants in their official and individual capacities deny that anyone ever attacked Mr. Tawney. On that basis they moved for judgment on the pleadings, attaching evidence they contend disproves the allegations. Because of concerns about the procedural propriety of considering these materials at the pleading stage, and to focus the parties on the threshold question whether this attack in fact happened, the Court converted the motion to one for summary judgment limited to the threshold question whether the alleged incident in fact occurred.

With the benefit of a summary-judgment record, the Court determines that the surveillance videos of Mr. Tawney's cell on the night in question, along with the intake photograph at the State prison the next day, foreclose a reasonable jury from

finding in his favor at trial.  For these reasons, as more fully explained below, the Court **GRANTS** judgment in favor of Defendants.

## FACTUAL AND PROCEDURAL BACKGROUND

Construing the evidence in favor of Plaintiff, the record establishes the following facts relevant to the parties' respective claims and defenses at this stage of the proceedings.

### A.     The Alleged Assault of Mr. Tawney and Its Claimed Cover-Up

On July 12, 2018, Plaintiff Larry Tawney, Jr. was detained in the Portage County jail following a criminal conviction while awaiting transport to the State prison system.  (ECF No. 20-1, ¶ 3, PageID #360.)  Sometime that night, between 10:00 pm and 5:00 am, Mr. Tawney claims that several sheriff's deputies or correctional officers entered his cell "and physically attacked him, kicking him in the head and body to the point where [he] lost consciousness."  (ECF No. 1, ¶ 9, PageID #10; *see also* ECF No. 20-1, ¶ 4, PageID #360.)  Because his attackers concealed their faces and beat him to the point where he lost consciousness, Mr. Tawney cannot identify them.  (*Id.*)

As a result of this unprovoked attack, Plaintiff claims he sustained numerous injuries, including severe lacerations to his mouth, which "was bleeding from stitches or sutures that were placed in and around my mouth," a dislocated jaw, and internal injuries, including internal bleeding and blood clotting.  (ECF No. 20-1, ¶ 6, PageID #360; *see also* ECF No. 1, ¶ 10, PageID #11.)  Plaintiff requested medical attention at

the jail and stated on the form that, "You guys are trying to cover up what happened." (ECF No. 20-1, ¶¶ 6 & 7, PageID #360.)

In his complaint, Plaintiff alleges that he was transported to the State prison system in such a way as to conceal his injuries. (ECF No. 1, ¶¶ 11 & 12, PageID #11.) In his affidavit opposing summary judgment, Mr. Tawney swears that the intake nurse at the State prison refused to take pictures of his body to show his bruises. (ECF No. 20-1, ¶ 18, PageID #362.)  Further, according to the affidavit, the nurse refused to note on the intake form that Mr. Tawney had any bruises or injuries around his mouth.  (*Id.*)  In the State prison system, Mr. Tawney sought treatment for injuries from the attack, but he claims that treatment was inadequate.  (*Id.*, ¶¶ 20, 23, 25 & 27, PageID# 362–63.)

According to the complaint, this experience forms part of a custom and policy at the Portage County jail of beating and abusing detainees "by starving them, torturing them, depriving them of medical care and other barbarities."  (ECF No. 1, ¶ 16, PageID #12.)  Plaintiff alleges that Portage County failed to take any action in response to the attack.  (*Id.*, ¶ 13.)  Further, according to Plaintiff's allegations, Defendants went so far as to fail to document his treatment and destroyed videotapes that would have showed the attack.  (*Id.*, ¶ 15, PageID #11-12; *id.*, ¶ 26, PageID #14.)  Plaintiff alleges that twenty others have made similar complaints in affidavits, but Portage County has undertaken no investigation, discipline, or prevention of abuses.  (*Id.*, ¶¶ 18–19.)

Based on his allegations, Plaintiff names as defendants Portage County, the Portage County Sheriff in his official and individual capacity, the Sheriff's chief deputy in his official and individual capacities, and twenty-three sheriff's deputies or correctional officers in their official and individual capacities—each of whom Plaintiff alleges participated in some way in his beating or the alleged cover-up.  (ECF No. 1, ¶¶ 4-6 & 22, PageID #8-10 & 13.)  Plaintiff asserts five counts under 42 U.S.C. § 1983 claiming violation of his rights under the Eighth Amendment as follows:

|      | Defendants | Basis for Allegations |
| --- | --- | --- |
| I.   | All Defendants | Excessive force, destruction of surveillance video, filing false reports, and covering up abusive conduct |
| II.  | Sheriff | Failed to train and supervise his subordinates and otherwise acquiesced in their conduct |
| III. | Individual Defendants (uninvolved in the assault) | Failure to intervene or minimize the duration and effects of the assault |
| IV.  | (Individual) Defendants | Deliberate indifference to Mr. Tawney's serious medical needs |
| V.   | Individual Defendants | Failure to report assault and falsification of documents |

Additionally, in Count VI, Plaintiff brings a claim against Portage County under *Monell v. Department of Social Services of the City of New York*, 436 U.S. 658 (1978). In Count VII, Plaintiff alleges intentional infliction of emotional distress against the individual Defendants under Ohio law.

### B.    Defendants' Records

In response to the allegations of the complaint, Defendants answered and incorporated the following three items into their responsive pleading.

*First*, Defendants provided surveillance video of Mr. Tawney's cell on the night of the alleged assault and of Mr. Tawney in other areas of the jail the following morning.  The Court's preliminary review of this video, which runs approximately 8 hours and 26 minutes, showed that the video contains some gaps lasting a few minutes at a time.  Moreover, the video is not date-stamped and does not include video from two hours (from 10 pm to midnight) on July 12, 2018.  In their answer filed at the same time as the video, Defendants deny that Mr. Tawney was attacked, claim he made up the incident, never told Defendants about an attack, and the videos prove that no one entered his cell on the night in question and that he was in good health the next morning, showing no problems with mobility or eating.  (ECF No. 7, ¶ 10, PageID #216.)

*Second*, intake records from the State prison system dated July 13, 2018—the day after the alleged attack—show no medical issues or concerns with Mr. Tawney. Further, the records reflect that Mr. Tawney denied any medical issues or concerns. They contain no indication of any assault the previous day.  (ECF No. 7-2, PageID #230–31.)

*Third*, the State prison system's booking photo of Mr. Tawney, also dated July 13, 2018, shows a smiling and apparently healthy individual, though the photo is

admittedly small and somewhat grainy in black and white.  (ECF No 7-3, PageID #233.)

Then, Defendants moved for judgment on the pleadings under Rule 12(c).  (ECF No. 8, PageID #234.)

### C.  Conversion of the Motion for Judgment on the Pleadings

On January 5, 2021, the Court provided notice to the parties that it will treat the motion for judgment on the pleadings as a motion for summary judgment, limited to the question of whether the attack on Mr. Tawney actually occurred.  (*See* Dkt. Entry, Jan. 5, 2021.)  At a status conference on the record later, the Court directed Defendants to make the three documents submitted with the answer of evidentiary quality under Rule 56.  (Dkt. Entry, Jan. 15, 2021.)  Once Defendants did so, the Court directed Plaintiff to limit the discovery needed to respond to the pending motion to "to what is necessary to respond to the threshold issues raised in Defendants' motion."  (Dkt. Entry, Mar. 18, 2021.)  Based on the parties' respective evidentiary submissions, briefs, and supplemental briefs and arguments, the threshold dispute between the parties is ripe for decision.

### ANALYSIS

Pursuant to Rule 56 of the Federal Rules of Civil Procedure, summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  On a motion for summary judgment, the Court must view evidence in the light most favorable to the non-moving party.  *Kirilenko-Ison v. Board of Educ. of*

*Danville Indep. Schs.*, 974 F.3d 652, 660 (6th Cir. 2020) (citing *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)).

On a motion for summary judgment, the moving party has the initial burden of establishing that there are no genuine issues of material fact as to an essential element of the claim or defense at issue. *Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1479–80 & n.12 (6th Cir. 1989); *Chappell v. City of Cleveland*, 584 F. Supp. 2d 974, 988 (N.D. Ohio 2008). After discovery, summary judgment is appropriate if the non-moving party fails to establish "an element essential to that party's case and upon which that party will bear the burden of proof at trial." *Tokmenko v. MetroHealth Sys.*, 488 F. Supp. 3d 571, 576 (N.D. Ohio 2020) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986)).

To determine whether a genuine dispute about material facts exists, it is not the Court's duty to search the record; instead, the parties must bring those facts to the Court's attention. *See Betkerur v. Aultman Hosp. Ass'n*, 78 F.3d 1079, 1087 (6th Cir. 1996). "The party seeking summary judgment has the initial burden of informing the court of the basis for its motion" and identifying the portions of the record "which it believes demonstrate the absence of a genuine issue of material fact." *Tokmenko*, 488 F. Supp. 3d at 576 (citing *Celotex Corp.*, 477 U.S. at 322). Then, the nonmoving party must "set forth specific facts showing there is a genuine issue for trial." *Id.* (citing *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 250 (1986)). "When the moving party has carried its burden under Rule 56(c), its opponent must do more than simply

show there is some metaphysical doubt as to the material facts." *Matsushita Elec.* *Indus. Co.*, 475 U.S. at 586.

If a genuine dispute exists, meaning "the evidence is such that a reasonable jury could return a verdict for the nonmoving party," summary judgment is not appropriate. *Tokmenko*, 488 F. Supp. 3d at 576 (citing *Anderson*, 477 U.S. at 250). However, if "the evidence is merely colorable or is not significantly probative," summary judgment for the movant is proper. *Id.* The "mere existence of some factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment." *Scott v. Harris*, 550 U.S. 372, 380 (2007) (quoting *Anderson*, 477 U.S. at 247–48).

## I.      Video and Photographic Evidence

In the current procedural posture, evaluation of the propriety of summary judgment turns on the key evidence of the video and the photographs of Mr. Tawney taken upon his admission to the State prison.   "[W]here, as here, there is 'a videotape capturing the events in question,' the court must 'view[] the facts in the light depicted by the videotape.'" *Green v. Throckmorton*, 681 F.3d 853, 859 (6th Cir. 2012) (quoting *Scott*, 550 U.S. at 378–81).

### I.A.    What the Evidence Shows

The Court reviewed the surveillance video Defendants supplied.  It shows the following.  Although it does not contain footage from 10 pm through midnight on July 12, 2018, from midnight until 5 am, no one entered Mr. Tawney's cell.  Around 5:30

am, the lights in the jail are on.  Mr. Tawney exits his cell for a few minutes, then returns and lays on his bed with his legs curled up.

On the morning of July 13, 2018, Mr. Tawney does not have any visible injuries on his head.  It is not possible to tell whether he has any injuries to his body concealed beneath his clothing.  The video shows Mr. Tawney walking without difficulty next to a corrections officer.  Further, it shows him briefly interacting in a friendly manner with the officer.  Later that morning, videos show Mr. Tawney entering and exiting his cell, which he mops.  He also mops the area outside his cell and removes a bundle of his belongings from his cell.  Shortly before noon, Mr. Tawney sits on a bench, appears calm and comfortable, and eats a sandwich from a bag lunch as officers and prisoners walk around.

In the current procedural posture, the Court declines to consider the intake report of the prison nurse as evidence in support of Defendants' motion.  Although this report provides no indication that Mr. Tawney was suffering from any significant medical problems, and notes the absence of objective findings of trauma or wounds (ECF No. 7-2, PageID #230; ECF No. 16-2, PageID #329), Plaintiff contends that the nurse refused to document his injuries from the attack (ECF No. 20-1, ¶ 18, PageID #362).  Construing the evidence in light of the video, however, the Court disregards this medical record.

However, the prison did take a series of color pictures of Mr. Tawney from various angles upon his admission on July 13, 2018.  (ECF No. 16-2, PageID #331–32.) These photos, which include views of Mr. Tawney with his teeth showing and mouth

closed, show *no* visible signs of injury of any kind.  (*Id.*)  Defendants' record confirms these phots were taken at intake on July 13, 2018.  (*Id.*, PageID #333.)  No information in the record calls that fact into question.

### I.B.    Video Evidence and Summary Judgment

In *Scott v. Harris*, 550 U.S. 372, 378–81 (2007), the Supreme Court addressed how to handle disputes of fact on a motion for summary judgment in the face of video and photographic evidence.  Although courts must ordinarily construe the record on summary judgment in favor of the non-moving party, "[w]hen opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment."  *Id.* at 380.

Such is the case here.  Although Plaintiff's claims are not implausible, as in *Scott* the video and photographic evidence blatantly contradicts that story to the point where no reasonable jury could believe it.  Setting aside the fact that the surveillance video fails to show anyone entering the cell during the night, in the morning Mr. Tawney does not appear injured.  He interacts with other inmates and officers normally, and he eats a sandwich—all while swearing that the attack left his mouth bleeding from stitches or sutures.  (ECF No. 20-1, ¶¶ 6–9, PageID #360–61.)  Moreover, the prison's intake photos on July 13, 2018 show no evidence of an injury to Mr. Tawney's head or mouth.  This evidence alone utterly discredits Plaintiff's view of the facts.  There is no *genuine* dispute of material fact, and no reasonable jury could return a verdict finding that the events Mr. Tawney alleges actually happened.

## II.      Plaintiff's Evidence and Arguments

Where photographic or video evidence has indications of being "doctored or altered in any way," or a non-movant provides evidence that "what it depicts differs from what actually happened," then the normal summary-judgment framework may apply. *See Scott*, 550 U.S. at 378. Under the law of this Circuit, where the video does not tell the whole story in a material respect, or reasonable jurors could interpret the video evidence differently, summary judgment is not appropriate. *Green*, 681 F.3d at 865. Such is the case here, Plaintiff maintains. But each argument Plaintiff advances fails to create a genuine dispute over the video and photographic evidence.

### II.A.   Reliability of the Videos

Plaintiff questions the reliability of the videos in two respects. (ECF No. 20, PageID #347.) First, he argues that the videos were taken at another time, either earlier in his July 2018 stay or, perhaps, during an earlier period of detention. (*Id.*) As his primary support for this argument, Plaintiff provides evidence that the jail's records for the night in question show that he was detained in cell 169, on the second floor of the jail. (ECF No. 20, PageID #349; ECF No. 20-1, ¶ 16, PageID #361; ECF No. 20-4, PageID #384 & #385–89.) But the video shows Mr. Tawney in cell 107, on the jail's first floor. (*See, e.g.*, ECF No. 20-1, ¶ 16, PageID #361.) Plaintiff bolsters his position with an affidavit from a fellow detainee, who swears that Mr. Tawney was housed on the second floor and that he heard the attack. (ECF No. 20-5, ¶¶ 4 & 6, PageID #390.) These discrepancies do not create a genuine issue of material fact because the undisputed evidence in the record establishes that (1) the videos are

11

authentic and have not been altered, and (2) the date stamps in an embedded cryptographic algorithm show that the videos were made on the dates and times indicated.  (ECF No. 16-1, ¶ 11, PageID #327; *see also id.*, ¶ 6, PageID #326.)

Second, Plaintiff points to skips and jumps in the videos to argue that they were selectively edited, undermining their reliability.  (*See, e.g.*, ECF No. 20-1, ¶ 17, PageID #362.)  Typically, these skips and jumps last for a matter of thirty seconds or so.  But in one case the jump is just over three and a half minutes.  (*Id.*)  Defendants offer a reasonable and legitimate explanation:  the cameras are motion activated, and occasional delays or issues with the motion-sensing equipment may make the video appear as selectively edited.  (ECF No. 16-1, ¶ 10, PageID #327.)  Again, Plaintiff offers no evidence to counter this explanation.  Even setting it aside, however, the record still forecloses a rational jury from finding in Plaintiff's favor because the video evidence from the morning of July 13 at the jail shows Mr. Tawney eating and otherwise healthy.  Put another way, even if any particular gap on the videos were long enough to permit an attack like the one Mr. Tawney describes (and the two-hour gap on the night of July 12 certainly amounts to one), the record as a whole is so one-sided to prevent a finding in his favor.

On these points and others, Mr. Tawney maintains there are factual disputes between what he remembers of the morning of his transport to prison and what the videos show that preclude summary judgment.  (ECF No. 20, PageID #349.)  Specifically, Mr. Tawney swears that he did not mop the floor at the jail on July 13, 2018 but on another day and that his recollections of the details of the morning before

12

his transport to prison differ from what the videos show.  (ECF No. 20-1, ¶¶ 13, 14 & 15, PageID #362.)  But the law, consistent with well-established understandings of neuroscience, readily explains discrepancies of this sort without the need for a jury trial.  *See, e.g.*, *United States v. Smithers*, 212 F.3d 306, 312 n.1 (6th Cir. 2000) (explaining that eyewitness testimony may often prove unreliable and the factors affecting memory and perception).  In short, as between Mr. Tawney's memory and the undisputed evidence the videos provide, no rational jury could credit the latter over the former and return a verdict in Plaintiff's favor.

### II.B.  Intake Photos

Plaintiff maintains that the intake photos at the prison do not reflect the extent of his injuries, which primarily were to his body.  (ECF No. 20, PageID #347–48.) Beyond this argument, Plaintiff presents no explanation—let alone evidence—to explain why the prison's intake photo shows no injury to his mouth.  In his affidavit, Mr. Tawney swears he was kicked in the head and bleeding from stitches or sutures to his mouth.  (ECF No. 20-1, ¶¶ 4 & 6, PageID #360.)  The numerous intake photos on the day after the alleged assault from various angles belie this claim.  (ECF No. 16-2, PageID #329.)  Indeed, the prison intake photographs show no injuries at all.  Even setting aside the evidence from the videos altogether, the intake photographs foreclose a rational finder of fact from returning a verdict for Plaintiff.

### II.C.  Plaintiff's Other Evidence

Plaintiff also provides other affidavits—from Mr. Tawney's sister (ECF No. 20-3), an investigator (ECF No. 20-4), and a fellow detainee at the jail (ECF

No. 20-5)—to try to create disputes of fact (ECF No. 20, PageID #351–52).  However, as in *Scott*, none of these affidavits or Plaintiff's other evidence creates a *genuine* issue of material fact in the face of videotapes and photographic evidence.

### II.D.  Procedural Notes

Contrary to Plaintiff's suggestions (ECF No. 20, PageID #358; ECF No. 24, PageID #424), the Court did not foreclose depositions after converting the motion to one for summary judgment.  Although the Court limited the proceedings to the threshold question whether the assault occurred, nothing foreclosed Plaintiff from requesting a deposition or two on issues relating to, say, the authenticity of the surveillance video from the jail.  Nor did Plaintiff suggest, consist with Rule 56(d), that he needed additional facts to respond to the motion.  To the contrary, the record shows that in status conferences in March and April 2021 the parties discussed Plaintiff's preparation of a record to respond properly.  (Minutes, Mar. 18, 2021; Minutes, Apr. 22, 2021.)  Further, the record shows that Plaintiff requested and received multiple extensions and opportunities to meet each of Defendants' arguments.  (*See, e.g.*, ECF No. 18; Order, May 13, 2021; ECF No. 24; Order, July 12, 2021.)  Tellingly, in none of Plaintiff's submissions did he question the reliability of the evidence Defendants put into the record regarding the authenticity or accuracy of the videos or counter that evidence with his own to create a genuine dispute of material fact.  (ECF No. 16-1.)

*     *     *

Finally, the Court reaches its determination based on the record evidence in this case and without respect to the ruling in *McClafferty v. Portage County Board of Commissioners*, No. 5:19CV2219, 2021 U.S. Dist. LEXIS 61869, 2021 WL 1214841 (N.D. Ohio Mar. 30, 2021).  There, another court in this District granted judgment on the pleadings on the excessive force claims of a detainee at the same jail as Mr. Tawney.  In that case, McClafferty solicited numerous detainees, including Mr. Tawney, to file civil rights complaints, 2021 WL 1214841, at *7, and an independent investigation found that these complaints (with one exception not relevant here) were "wholly fabricated or greatly exaggerated," *id.* at *4 n.8.  McClafferty's scheme included Mr. Tawney's sister, who provided an affidavit opposing Defendants' motion in this case.  *Id.* at *9.  Although the record from *McClafferty* may necessitate further inquiry should this case proceed, the Court notes that it limited its ruling on the threshold summary-judgment issues in this case to the record discussed above and did not take *McClafferty* into account.

## CONCLUSION

For the foregoing reasons, this case presents a record so one-sided that it does not require submission to a jury.  Accordingly, construing Defendants' motion for judgment on the pleadings (ECF No. 8) as a motion under Rule 56, the Court **GRANTS** the motion and enters judgment in favor of Defendants.

**SO ORDERED.**

15

Dated:  August 5, 2021

J. Philip Calabrese
United States District Judge
Northern District of Ohio